DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a March 8, 2000 decision and judgment entry of the Ottawa County Court of Common Pleas in which the court: 1) granted summary judgment to appellees, Union Oil Company of California ("Unocal"), and Michael A. Johnson, on the claims filed by appellant, Donna M. Lueke, for intentional infliction of emotional distress, negligent infliction of emotional distress,
nuisance, and trespass; and 2) dismissed the case. Appellant has presented three assignments of error for consideration on appeal that are:
 "ASSIGNMENT OF ERROR NUMBER ONE: It was error to hold that plaintiff was required to establish `substantial damages to her property or property interest' as an element of her trespass claim.
 "ASSIGNMENT OF ERROR NUMBER TWO: There is no basis to conclude that the interference with appellant's right to the use and enjoyment of her property by petroleum contamination was `reasonable' thus defeating her nuisance claim.
 "ASSIGNMENT OF ERROR NUMBER THREE: The trial court dismissed appellant's claims based on negligence, strict liability, and punitive damages without according appellant a meaningful opportunity to respond."
Before addressing the assignments of error, we will first review the facts and procedure in this case.
This case began on December 18, 1997 when appellant filed a complaint in the Ottawa County Court of Common Pleas seeking compensation from appellees and one other company, Marathon Oil Company, for damages she alleged she suffered from living in a residence in Port Clinton, Ohio where the water supply was contaminated by a gasoline leak from underground tanks at a gasoline station owned or operated by appellees and by Marathon Oil Company at different times. She filed claims for 1) negligence; 2) strict liability; 3) trespass from contaminant discharge; 4) nuisance; 5) intentional infliction of emotional distress; 6) negligent infliction of emotional distress; and 7) punitive damages. All of the named defendants filed answers to the complaint and the parties began conducting discovery.
Appellant's deposition testimony showed that she has suffered from poor health since 1991. She has been diagnosed with Chronic Fatigue Immune Dysfunction Syndrome and Multiple Sensitivity ("CFS"). She testified that she has to be particularly careful not to expose herself to odors from soaps, perfumes, cleaning fluids and chemicals, including gasoline, since she can suffer immediate physical symptoms including excessive fatigue, dizziness, nausea and headaches upon exposure.
She said that she had been renting an apartment and was given a thirty day notice to vacate because the owners were going to completely renovate the apartment building. She therefore began to look for another place to live and hired a real estate agent to help her. The real estate agent showed her a house that was available to lease with an option to buy.
Appellant acknowledged that the sellers provided her with written notice that it was discovered in 1990 that the water well on the property had been contaminated with gasoline that leaked from underground storage tanks at a gasoline station across the street from the property. She said she was assured that the water tested "clear" for the preceding two or three years. She testified that she spoke with an official from Unocal, and he provided her with copies of the most recent results of tests conducted on the well water at the property she was interested in leasing to purchase. She also spoke with an official at the Ottawa County Health Department who was in charge of water. She testified that he was aware of the past situation at the property she was considering leasing with an option to purchase and that he told her he did not think there was any problem with the property.
Appellant then decided to lease the residence and to make an offer to purchase. She signed a residential lease which included an express statement that the well water was previously contaminated by petroleum products and that the landlords made no warranties that the water was safe to use for any purpose. A similar disclosure was made in writing as an addendum to the purchase agreement. Appellant testified that she read and understood both disclosures, and both were attached to her deposition as exhibits.
Appellant moved into the residence in June 1995. In August 1995, the bank where she applied for a mortgage to purchase the residence turned down the application because the bank was unwilling to accept the property as collateral for the loan, due to an appraiser's report that detailed contamination concerns. Appellant testified that she then began actively looking for another place to purchase.
Appellant testified that in early November 1995 she started to have more fatigue. She also experienced itching, burning, and urinary irritations. She said that on December 19 or 20, 1995, she turned on her tap water and smelled an odor of gasoline. She turned the water off and called the real estate agent who first showed her the property. The real estate agent reported the situation to Unocal, and the same official from Unocal with whom appellant spoke before she moved into the residence came the next day to take samples of water for testing. When the test results were received on December 21 or 22, the official offered to have appellant "relocated to a hotel of my choice in the area while they remedied * * *." Unocal then installed carbon filters on the water system at the residence on December 27, 1995.
In January 1996, appellant's doctor told her tests done on her liver showed chemical toxicity, and she started a detoxification treatment. The treatment included taking herbs and saunas.
Appellant continued to live at the rental residence as a month-to-month tenant until June 1996. In June 1996, she moved to a residence that she purchased and had completely remodeled and refinished before she moved.
On February 10, 1999, Marathon Oil Company filed a motion for summary judgment, arguing there was no evidence to show it ever had ownership or control over the underground storage tanks that were the source of contamination on appellant's leased property. On April 14, 1999, the trial court granted summary judgment to Marathon Oil Company. On April 23, 1999, appellant's claims against Marathon Oil Company were dismissed with prejudice.
On September 29, 1999, appellees filed a joint motion for summary judgment. Appellees admitted they are two former owners and operators of a gasoline station that was located across from the residence appellant leased with an option to buy. They also said they did not contest that they are liable for gasoline found in the water at appellant's leased residence. However, they alleged that appellant's claims failed because she did not establish any breach of duty by appellees or any injuries or damages proximately caused by a breach of duty by appellees. In addition, they argued that even if there was some legal duty they breached, appellant's claims failed because she had assumed the risk.
Appellant filed a response to appellees' motion for summary judgment. She said: "Although defendants assert entitlement to judgment on all Ms. Lueke's claims, generically, their arguments address only her claims based on personal injury." She then withdrew her claims based upon personal injury, but said she continued to prosecute her claims based upon other types of injuries, including damage to real property and emotional distress.
She argued that the damage to real property included: 1) diminution in value of her leasehold interest; 2) diminution in her interest as a contract vendee; 3) loss of use and enjoyment of the property; and 4) loss of peaceful possession of the rental property. She said that it was undisputed that the property was contaminated with petroleum products in the soil and subsurface water supply. She then said that the contamination constituted proximate cause for both a nuisance claim and an environmental trespass claim. She said she was entitled to damages for inconvenience, annoyance and diminished quality of life, all of which could only be judged by a jury.
She also alleged that she was entitled to recover damages for both intentional and negligent infliction of emotional distress. She said that she reasonably relied upon representations from agents of Unocal that the water was clear before she moved into the rental residence. She said that she suffered emotional distress when she later learned that she had toxicity levels in her liver. She argued that her claims were not barred by her "idiosyncratic sensitivity" or "psychological peculiarity". She said that the deleterious effects of petroleum related contaminants on the human body are a proper subject of judicial notice.
Finally, she argued that she had not assumed the risk when she moved into the rental property. She said that even if appellees wished to assert that affirmative defense, the case had to go to trial, because only a jury can decide if a party did assume the risk.
On November 24, 1999, appellees filed a reply to appellant's response to their joint motion for summary judgment. In their reply, they argued that appellant was not entitled to recover for emotional distress (either intentional or negligent) because she had not shown any outrageous conduct on the part of appellees, nor had she proved that her distress was severe and debilitating. They argued that since there was no evidence to show that appellant's water was ever contaminated to such an extent that it became unsafe, one could only conclude that appellant's distress was caused by her mistaken belief that the water was unsafe and somehow caused her personal injury.
Appellees also argued that there was no real injury to appellant's rental property that would permit her to collect an award of damages. They said: "Stripped to its essentials, Plaintiff's real property damage claim is that safe drinking water diminished her leasehold interest in the residence."
Finally, appellees again argued that appellant assumed the risk when she moved onto the rental property. They said she knew that she is extra sensitive to chemicals, she was never given any assurances by anyone that the contamination levels on the property would not go up, and that she had specific knowledge of the characteristics of the water before she moved onto the property. They argued that all of the above factors showed that she knowingly assumed the risk when she moved onto the property and assumption of the risk defeats all of her remaining claims.
Appellant then sought leave to file a surreply brief, which was granted. On December 6, 1999, appellant filed a surreply brief in which she argued that even if the water at the rental property was not contaminated above the Maximum Contamination Limit (MCL) she still had valid claims for the interference with her exclusive possession and quiet enjoyment of her property. She said there was no dispute that the water was contaminated with petroleum products, and that because of the contamination the bank refused to accept the property as collateral for a mortgage loan. She said the contamination disrupted her life, caused her substantial inconvenience and invaded her privacy.
She also argued that she had valid claims for emotional distress. She said since there was some contamination of the water at the rental property, her claims were distinguishable from those cited by appellees for being defeated because the persons claiming injury were never in any real peril.
Finally, she said there was no factual basis for appellees' assertion that she assumed the risk when she moved onto the rental property. She said she was told that the water was safe.
On January 12, 2000, appellant filed a motion for leave to voluntarily dismiss some of her claims for damages. She asked for leave to dismiss any claims based upon personal injury, since she earlier withdrew all her claims based upon personal injury.
Appellees filed a brief in opposition to appellant's motion for leave to voluntarily dismiss certain claims for damages. Appellees argued that appellant should be compelled to specify which causes of action she still believed were viable.
On March 8, 2000, the trial court filed a decision and judgment entry. The court stated that it had considered all of the motions and responses filed, as well as oral arguments related to the motion for summary judgment heard on January 7, 2000. The court noted that appellant initially asserted seven separate causes of action. The court then said:
 "However, after Defendants filed their motion for summary judgment on the entire case, Plaintiff, through her memorandum, motion and the oral argument before the Court, wished to withdraw her claims predicated upon physical injuries. While Plaintiff further insisted that the withdrawal would only affect the damage portion of her claims without prejudicing any of the causes of action, her own briefs as well as Defendants' readily demonstrated that the only actionable causes of action at issue are now: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) nuisance; and (4) trespass. Accordingly, the Court will only address these four (4) causes of action in this decision."
The court ruled that appellant's claims for intentional infliction of emotional distress failed because the record did not show any outrageous conduct on the part of appellees. The court further found that appellant did not show in her deposition or in a subsequent affidavit that she suffered severe and debilitating emotional distress as a matter of law.
The court likewise found that appellant did not have a viable claim for negligent infliction of emotional distress. The court acknowledged that appellees' demonstration that the contamination levels in the water never exceeded levels considered to be safe merely showed compliance with regulatory standards and did not show they met the standard of care required under common law. The court then said:
 "Theoretically, given Plaintiff's delicate health conditions of MCS and CFS, it is not unreasonable to argue that should Plaintiff have stayed in the house and had physical contact, other than drinking, with the water that was full of gasoline odor, this contaminated water would be a real danger to her physical condition. Nevertheless, Plaintiff gave us not even a scintilla of evidence toward this direction. Therefore, absent any evidence to the contrary, the Court has to agree with Defendant that the water in the house posed no danger to Plaintiff in any way even at its highest level of benzene contamination."
Since the court therefore concluded that the water never was a real danger to appellant, it ruled that she had no claim for negligent infliction of emotional distress since her distress, if any, was caused by a non-existent peril.
The trial court next addressed appellant's claim for nuisance. The trial court began by noting that it must consider whether persons of ordinary tastes and sensibilities would have found that the contamination of the rental property caused a serious inconvenience or materially affected their physical comfort to such a degree that the contamination constituted a nuisance. The court then considered the facts presented in this case and concluded that the interference with appellant's use and enjoyment of the water supply by petroleum contamination was neither substantial nor unreasonable. The trial court said that whatever annoyance or discomfort appellant suffered while living at the rental property came from engineers coming into her house to install carbon filters and inconvenience from traveling back and forth between her house and a hotel during the Christmas season so that the remedial work could be done to the rental property. The trial court noted that Unocal responded to appellant's notification of the gas odor in the water promptly and effectively. In addition, Unocal voluntarily paid for appellant's lodging while she was at the hotel and paid for the boarding of her dog during that time. The trial court concluded that if it allowed appellant to recover for her annoyance and discomfort caused by the remedial work done by Unocal, it would in effect be punishing Unocal for taking remedial action in response to a contamination call. The court said appellant should have expected some non-health threatening discomfort caused by living on the rental property because she was given disclosure forms before she moved into the house. The trial court therefore dismissed appellant's claim for nuisance.
Finally, the trial court addressed appellant's claim for trespass. The trial court said that appellees did not induce appellant to make a purchase offer on the rental property, which she knew to be contaminated. The trial court also said that appellant "stayed in the house as long as she pleased until May of 1996, and there was no evidence that she was forced to vacate the house before the lease expired." The trial court said there was no evidence to show that appellant suffered "substantial damage to her interest as a lessee in the property as a result of the technical trespass of petroleum contamination." The trial court therefore dismissed the trespass claim.
The trial court then said:
 "As a related matter, since Plaintiff has withdrawn her claims predicated upon physical injuries and the Court is now dismissing her property and emotional distress claims, it is clear now that there is nothing left to the Complaint to be tried. Accordingly, Defendants' brief filed on January 28, 2000 on the issue of how Plaintiff should procedurally withdraw her personal injury claims and clarify her remaining complaint is moot."
The trial court then granted appellees' summary judgment and dismissed the case. Appellant subsequently brought this appeal.
In support of her first assignment of error, appellant argues that the trial court erred when it ruled that she had a burden to show there was substantial damages to her property or to her property interest from the contamination before she had a viable cause of action for trespass. She argues that the trial court misinterpreted the holding of the Supreme Court of Ohio in Chance v. BP Chemicals, Inc. (1996), 77 Ohio St.3d 17. She says that case related only to trespass cases that affect the reasonable and foreseeable use of the subsurface of property. She argues: "In the case sub judice, in contrast, the appellant did not claim her interests in the soil and rock 2,600 feet below the surface had been trespassed upon; instead, she alleged that her right to the uninterrupted use and enjoyment of her leasehold interest — her home — was invaded by petroleum contamination." She says, therefore, that a presumption of damages rule applies and she is entitled to have her trespass claim go to trial.
Appellees respond that the trial court correctly construed and applied the ruling of the Supreme Court of Ohio in Chance v. B.P. Chemical Co.,Inc., id., in this case. Appellees argue that this is a case involving indirect trespass, and the Supreme Court of Ohio followed the modern doctrine when in Chance v. B.P. Chemical Co., Inc. of requiring a proof of actual damages in a case of indirect trespass, rather than applying the rule of presumption of damages that was developed in common law cases of direct trespass.
We agree with the trial court and with appellees that the rule of law followed in Ohio regarding an indirect trespass of land is that there is no presumption of damages. Instead, the Supreme Court of Ohio has said that when an indirect trespass occurs subsurface, the owner of the property must show that the invasion of the property "actually interfere[s] with [the property owner's] reasonable and foreseeable use of the subsurface." Chance v. BP Chemicals, Inc. (1996), 77 Ohio St.3d 17,26.
The facts in this case support a ruling that the trespass involved here was not a direct trespass, but was an indirect trespass, since the gasoline contamination on the property appellant rented came from leaking underground storage tanks located across the street from the rental property. In cases of indirect trespass, damages are not presumed, and actual damages in the form of "physical damages or interference with use" must be shown before the person suing for trespass can prevail. Id. at 26-28. Furthermore, the damages must be "substantial." Williams v.Oeder (1995), 103 Ohio App.3d 333, 339; and Brown v. County Commissionersof Scioto County (1993), 87 Ohio App.3d 704, 717. See, also, Prosser, Law of Torts (5 Ed. 1984) 67-69, and 82-83, Section 13.
The trial court noted that appellant sought to recover money pursuant to her trespass claim for her costs associated with renovating the rental house, finding a new house and her earnest money from her purchase offer that she lost when she did not purchase the rental house. The trial court noted that the evidence showed appellant did not purchase the rental house because the bank refused to accept the property as collateral for a loan due to its own environmental concerns, and that the bank's refusal happened in August 1995. The trial court also noted that appellees did not induce appellant to make a purchase offer on the rental house and that they provided her with all the information they had available about the contamination problem before she made her purchase offer. Finally, the trial court noted that appellant stayed in the rental house for several months after she complained of the gasoline odor, which appellees promptly remedied, and that there was no evidence to show that appellant was forced from the rental house before her lease expired. The trial court concluded: "Accordingly, since the substantial damage element was not met by Civil Rule 56(E) evidence, Plaintiff's trespass claim shall be DISMISSED."
In her argument in support of this assignment of error, appellant has not disputed the trial court's ruling that there is no evidence in this case to prove that she sustained substantial damages. Appellant has instead contended that the trial court applied the wrong legal standard when it found that she had the burden to show that she had substantial damages and that there is no presumption of damages in this case. Since we have concluded that the trial court applied the correct legal standard, we allow its ruling that the standard was not met in this case to stand. Appellant's first assignment of error is not well-taken.
In support of her second assignment of error, appellant argues that the trial court erred when it dismissed her nuisance claim after finding that the interference with her use and enjoyment of the property was "reasonable." She argues that the question of whether the interference was reasonable is a factual question that can only be decided by a jury, and may not be decided by a trial court on summary judgment. In the alternative, she asks this court to find that the interference with her use and enjoyment of her rental home was not reasonable or insubstantial as a matter of law.
Appellees respond that because no material facts are disputed in this case, the question of whether those facts "could constitute a substantial and unreasonable interference" with appellant's use and enjoyment of her rental property was a matter of law that the trial court could decide. Appellees also argue that the trial court did not err when it ruled that there was no substantial or unreasonable interference with appellant's use of her rental property in this case.
First, we note that the question of whether a nuisance exists is generally decided by a trier of fact. However, when material facts are not in dispute, trial courts may consider the undisputed facts and may determine as a matter of law whether those facts meet a legal standard for a tort cause of action. See, Pyle v. Pyle (1983), 11 Ohio App.3d 31,34-35 (Court can decide that facts do not show outrageous conduct and can grant summary judgment for emotional distress claim).
Next, we note that all parties are in agreement that the trial court applied the correct standard for determining whether a cause of action for nuisance exists in this case. The standard applied by the trial court was: "any activity which results in an unreasonable interference with the use and enjoyment of another's property." O'Neil v. Atwell
(1991), 73 Ohio App.3d 631, 635. Therefore, applying that standard, we turn to appellant's alternate argument that the facts in this case are such that the trial court erred when it decided that the interference with appellant's use and enjoyment of her rented property was not unreasonable or substantial.
After carefully considering the arguments of the parties and the facts in this case, we conclude that the trial court did not err when it ruled that the interference appellant experienced with the use and enjoyment of her rented home was not unreasonable or substantial. The record shows that appellant was only out of her rented home and in a hotel for a little over a week. Appellees promptly responded to her call and installed carbon filters that remedied the problem, allowing appellant to continue living in the residence until the lease term expired. Furthermore, appellant was fully advised of the contamination information that served as the basis of the bank's denial of her mortgage application before she moved to the property, before she made her offer to purchase, and before she applied for the mortgage. As the trial court noted, appellant could have anticipated that she may suffer some non-health threatening discomforts when she chose to live in the house after receiving full disclosure of the contamination problem. Accordingly, appellant's second assignment of error is not well-taken.
In support of her third assignment of error, appellant argues that she asserted several causes of action in her complaint, including nuisance, trespass, strict liability and punitive damages. She says that when they filed a motion for summary judgment appellees "focused virtually exclusively on the extent of appellant's personal injuries — claims that appellant later advised the court she wished to withdraw." She says that while appellees did address her claims for trespass and nuisance in their surreply brief, they never advanced any argument in the trial court challenging her claims for negligence, strict liability or punitive damages. Therefore, she argues, the trial court should not have dismissed her entire case even if appellees were entitled to summary judgment on four of her claims.
Appellees respond that when they filed their motion for summary judgment, they "sought summary judgment on the entire complaint." They further argue that appellant was given ample opportunity to respond to the motion for summary judgment "and does not suggest what more she would have offered."
Our own review of the record shows that appellees did seek summary judgment on the entire complaint. The record also shows that the trial court did permit appellant to fully argue her case before it ruled on the motion for summary judgment. Appellant's third and final assignment of error is not well-taken.
The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ Peter M. Handwork, J.
JUDGE
Melvin L. Resnick, J., CONCUR.
James R. Sherck, J., CONCURS IN JUDGMENT ONLY.